IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| C CONSTRUCTION CO., INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CAUSE NO. 6:06-CV-313 |
| | § | |
| CITY OF JACKSONVILLE, NORTH | § | |
| CAROLINA and ELLINWOOD | § | |
| DESIGN ASSOCIATES, LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Came on for consideration this day Defendant Ellinwood Design Associates, LTD.'s

Motion to Dismiss Under Rules 12(b)(2) and 12(b)(6), Alternative Motion for More Definite

Statement Under Rule 12(e), and Brief in Support (Docket Entry No. 7); and Defendant the

City of Jacksonville's Motion to Dismiss Under Rule 12(b)(2) and Brief in Support (Docket

Entry No. 8).  The Court, having considered said motions and the Responses, finds that this

Court is without jurisdiction over the persons of each defendant and that the motions to

dismiss should be granted.

**BACKGROUND**

Plaintiff C Construction Company ("C Construction") is a Texas Corporation with its

principal place of business in Tyler, Texas.  On or about November 19, 2003, C Construction

entered into a contract with Defendant the City of Jacksonville, North Carolina ("City of

Page 1 of 11

Jacksonville") to serve as general contractor in the expansion and renovation of the Jackson

City Hall.  C Construction began performance of the contract on or about January 20, 2004.

C Construction alleges that on or about May 30, 2006, it provided the City of Jacksonville

with a request for Progress Payment No. 30 in the amount of $156,396.00.  C Construction

indicates that payment has not been remitted as required by the contract.  C Construction is

suing the City of Jacksonville for breach of contract and seeks payment and additional lost

profits and other damages resulting from Jacksonville's alleged breach.

C Construction also alleges that on or about January 16, 2002, the City of Jacksonville

entered into an agreement for architectural services with Defendant Ellenwood Design

Associates ("EDA"), a North Carolina corporation with its principal place of business in

Raleigh, North Carolina.  EDA is not a party to C Construction's contract with the City of

Jacksonville, and C Construction is not a party to the City's contract with EDA.  Plaintiff

alleges that EDA has tortiously interfered with C Construction's contract with the City of

Jacksonville by causing the City to delay payment to Plaintiff.  C Construction further alleges

that EDA has tortiously interfered with Plaintiff's efforts to perform its contractual

obligations and that EDA has maliciously defamed Plaintiff.

In the present motions, EDA and the City of Jacksonville argue that this Court does

not have personal jurisdiction over them.  EDA further argues in its motion that C

Construction's claims should be dismissed under the Texas Civil Practice and Remedies

Code and that C Construction's claims for tortious interference and defamation fail as a matter of law.  Alternatively, EDA moves for a more definite statement of Plaintiff's claims.

## LEGAL STANDARD

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must present sufficient facts to make out a prima facie case for the exercise of jurisdiction over a non-resident defendant. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  A court must accept as true all non-conclusory, uncontroverted allegations in the plaintiff's complaint, and it must resolve all factual conflicts in favor of jurisdiction. *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine*, 205 F.3d at 214).

Whether this court has personal jurisdiction over a defendant depends on whether personal jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the U.S. Constitution. *Alpine View*, 205 F.3d at 214.  The Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id*; *Central Freight Lines*, 322 F.3d at 380.  Therefore, the Court must consider whether exercising jurisdiction over the Defendants is consistent with constitutional due process. *See Alpine View*, 205 F.3d at 214.

Exercising personal jurisdiction over a non-resident defendant is consistent with due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and

(2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Central Freight Lines*, 322 F.3d at 380 (quoting *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).   To find that a defendant has sufficient minimum contacts with the forum state, a plaintiff must establish that the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   The defendant's activities in the subject forum "must justify a conclusion that the defendant should reasonably anticipate being called into court there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A defendant's contacts with a forum may either be "general" or "specific." *Central Freight Lines*, 322 F.3d at 381.   Specific jurisdiction arises when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).   A court may assert general jurisdiction over a non-resident defendant when that defendant's contacts with the forum state are "substantial and 'continuous and systematic' but unrelated to the instant cause of action." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Once a plaintiff meets its burden to establish minimum contacts between a defendant

and the forum state, the burden shifts to the defendant challenging jurisdiction to make a

"compelling case" that "the assertion of jurisdiction is unfair and unreasonable." *Id*. at 384.

## ANALYSIS

### A.  Minimum Contacts

Defendants EDA and the City of Jacksonville argue that this Court lacks personal

jurisdiction under Rule 12(b)(2) because EDA and the City of Jacksonville have not

purposefully established minimum contacts with the state of Texas.  C Construction does not

argue that EDA or the City of Jacksonville are subject to general jurisdiction in Texas.  The

Court therefore finds that Plaintiff has failed to establish general jurisdiction over the

Defendants and limits its analysis to specific jurisdiction.

Specific jurisdiction over a defendant may exist where a defendant has "purposefully

directed" his activities at residents of the forum and the litigation results from alleged injuries

that "arise out of or relate to" those activities.  *Burger King*, 471 U.S. at 472; *see Ruston Gas

Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418–19 (5th Cir. 1993).  That is, the

minimum contacts prong is satisfied if the non-resident purposefully avails itself of the

privilege of conducting activities within the forum state such that the non-resident should

reasonably anticipate being haled into court in the forum state.  *Ruston Gas Turbines*, 9 F.3d

at 419 (citing *Burger King*, 471 U.S. at 475; *World-Wide Volkswagen*, 444 U.S. at 297).

In this case, the important element is that of "purposeful direction" and "purposeful availment" of the privilege of conducting activities in this state.  To find minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The litigation must also arise out of those contacts.  *Id.*  If the non-resident defendant has not directed activities at the forum such that it may reasonably anticipate being haled into court in the forum state, the requisite minimum contacts are lacking and specific jurisdiction does not exist.  *See Ruston Gas Turbines*, 9 F.3d at 419.

## 1.      EDA's Contacts

C Construction alleges that EDA directed activities toward Texas when it engaged in tortious interference with C Construction's contract and when it published false and misleading information about C Construction. (Pl.'s Resp. At 8).  C Construction argues that these activities are sufficient to establish the required minimum contacts with this state.  In support of this contention, C Construction cites the well-known precedent of *Calder v. Jones*, in which the Supreme Court found that a defendant journalist had sufficient minimum contacts with the state of California when he published a defamatory article in Florida that he knew would affect the plaintiff's reputation in California.  465 U.S. 783, 789–90. Plaintiff argues that, just as in *Calder*, EDA engaged in tortious conduct directed at and

whose injury was felt in Texas such that EDA should reasonably anticipate being haled into court in Texas.

The Court disagrees.  In this case, Plaintiff has merely alleged—in a somewhat conclusory fashion—that EDA engaged in tortious interference with contract and defamation. Plaintiff does not identify any particulars that permit the Court to determine that EDA engaged in conduct purposefully directed at Texas.  In *Calder*, for instance, the Court considered the wide circulation of the subject publication and found that the defendant knew the statements would reach California and that the harm to the plaintiff would be felt in California.  *Id*. at 789–90.  In contrast, C Construction has not alleged facts that indicate EDA purposefully directed its activities at the state of Texas.  It is not alleged that EDA ever traveled to Texas or that it published any defamatory statements in Texas.

It is undisputed that the transaction that is the subject of this case occurred in North Carolina, and that all causes of action arise out of services performed by C Construction and EDA in North Carolina.  C Construction has alleged no facts that indicate that EDA would not reasonably anticipate being haled into Court in Texas.  Accordingly, C Construction has not demonstrated that EDA has sufficient minimum contacts with this state to justify the exercise of personal jurisdiction over EDA.

### 2.  City of Jacksonville's Contacts

Similarly, C Construction alleges that the City of Jacksonville purposefully availed itself of the privilege of conducting its activities in the State of Texas by consummating a

transaction with a Texas corporation ad executing and returning the contract to Texas. C Construction further alleges that the contract required payment in Texas. C Construction claims that the City's specific act of failing to make payment under this contract is a sufficient minimum contact to justify the exercise of this Court's personal jurisdiction over the City.

The facts as alleged by C Construction, however, fail to establish the required contacts. It is undisputed that the City of Jacksonville is not a Texas municipality or corporation, has never engaged in any business concerning the transaction at issue within the State of Texas, has never committed a tort in Texas, has no employees or agents in Texas, does not maintain a place of business or own real or personal property in Texas, and does not maintain bank accounts, telephone numbers, or post office boxes in Texas. The only identified basis for jurisdiction is that the City has a contract with the Plaintiff, a Texas resident, which contract the City is alleged to have breached. C Construction has not alleged that the cause arises out of any services to be performed in Texas, or that any part of the contract was negotiated, executed, or performed in Texas. In fact, it is undisputed that both parties actually performed under the contract in North Carolina and that the contract is to be governed by North Carolina law.

Just as with EDA, Plaintiff has not established that the City of Jacksonville has purposefully directed its activities at this state, much less that the City has in any way invoked the benefits and protections of this state's laws. *See Electrosource*, 176 F.3d 867

at 871–72.  In addition, negotiating, executing, and performing an isolated contract with an out-of-state party does not by itself establish sufficient minimum contacts with the out-of-state party's state of residence.  *Id*. at 872 (citing *Burger King*, 471 U.S. at 478).  In *Electrosource*, for instance, the Fifth Circuit found minimum contacts only when the contract itself required a course of dealing between the plaintiff and non-resident defendant such that the contract created "continuing and wide-reaching contacts" between the defendant and the plaintiff's forum state.  *Id*.  The *Electrosource* court concluded that these contacts with the forum, which extended beyond the subject contract with the plaintiff, were such that the defendant should have reasonably anticipated being haled into court in that forum.  *Id*.

In contrast, the contract at issue was the result of an open bid process conducted in North Carolina.  Moreover, the plaintiff actually has an office in Jacksonville, North Carolina, and all negotiations and performance on the contract occurred in North Carolina.  There is no other evidence that the City of Jacksonville's contract with C Construction committed it to the sort of continuing and wide-reaching contacts with this forum that were the subject of the contract in *Electrosource*, or that the City ever engaged in conduct from which it could reasonably anticipate being haled into court in Texas.  Accordingly, C Construction has failed to show the necessary minimum contacts with Texas to justify this Court's exercise of jurisdiction over the City of Jacksonville.

**B.  Traditional Notions of Fair Play and Substantial Justice**

Though the Court finds a lack of minimum contacts as to EDA and the City of Jacksonville, the Court further finds that, even if EDA or the City had sufficient minimum contacts with Texas, the exercise of this Court's jurisdiction over the Defendants would not comport with traditional notions of fair play and substantial justice.  The burden of proving that the exercise of jurisdiction over the Defendants is unfair rests with the Defendants.  *Burger King*, 471 U.S. at 477.  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (emphasis added).  Nevertheless, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478 (citations omitted).

Here, EDA and the City argue that the burden of defending this case in Texas is substantial.  The Defendants argue that they are citizens of North Carolina and that having to pay for representatives to travel to this forum to attend depositions, pre-trial hearings and trial would impose an undue hardship on them.  The Defendants further argue that, under circumstances where the defendants have not purposefully availed themselves of the privileges and benefits of this state beyond an isolated contract with a Texas resident, that is to be performed in North Carolina, requiring them to defend a case in Texas would offend traditional notions of fair play and substantial justice.  The Court agrees and finds that, even

if the Defendant's alleged wrongful conduct might be said to constitute sufficient minimum contacts with Texas, requiring EDA and the City to defend this suit in Texas would offend traditional notions of fair play and substantial justice.

## CONCLUSION

For the above stated reasons, the Defendants EDA and the City of Jacksonville are not subject to this Court's personal jurisdiction and that the Defendants' motions to dismiss pursuant to rule 12(b)(2) should be, and here by is, **GRANTED**.  It is therefore

**ORDERED** that the Plaintiff's claims against the defendants, Ellenwood Design Associates, LTD. and the City of Jacksonville, North Carolina are hereby **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction over the person of each defendant.

**It is SO ORDERED.**

**SIGNED this 18th day of July, 2007.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE